UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRADE ASSOCIATES, INC., a Washington corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>FUSION TECHNOLOGIES INC., a Washington corporation,<br><br>                    Defendant. | Case No. 09-5804RJB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment to Dismiss Defendant's Counterclaims of Trademark Ownership (Dkt. 38).  The Court has considered the motion, the responses, and the relevant documents herein.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 21, 2010, Plaintiff Trade Associates filed an amended complaint seeking correction of patent inventorship, declaration of patent ownership, and alleging, among other things, that Defendant Fusion Technologies breached and repudiated a royalty agreement and made misrepresentations when entering into the royalty agreement.  Dkt. 29, p. 7-11.  On June 7, 2010, Defendant Fusion filed an answer to the amended complaint and asserted six counterclaims.  Dkt. 34, p. 12-15.  Fusion alleged that Trade Associates breached the royalty agreement by failing to pay quarterly royalties, made underpayment of royalties, obstructed Fusion's right to inspect "books and other information," failed to market, produce or sell Dura-

1   Block technology, did not transfer Dura-Block technology patents and trademarks to Fusion, and

2   alleged that Trade Associates was unjustly enriched.  *Id*.

3          On July 1, 2010, Plaintiff filed a motion for partial summary judgment regarding

4   Defendant's counterclaim of trademark ownership.  Plaintiff states that the Dura-Block mark as

5   used in connection with sanding blocks for sanding automobiles, is registered to Trade

6   Associates and has become incontestable under 15 U.S.C. § 1065, meaning that Plaintiff Trade

7   Associates is conclusively presumed to be the owner of the mark.  Dkt. 38, p. 4, 7.  Plaintiff also

8   states that it first used the Dura-Block trademark in August of 1999 and that the parties entered

9   into a Royalty agreement in which Defendant Fusion has recognized Trade Associates'

10  ownership of the Dura-Block mark.  Dkt. 38, p. 4, 6-7.  Plaintiff is seeking dismissal of

11  Defendant's counterclaim which, Plaintiff states, alleges a contingent ownership interest in the

12  Dura-Block mark.  *Id*.  Plaintiff contends that the agreement was based on the two companies'

13  mutual understanding that it was the owner of the Dura-Block trademark, regardless of whether

14  the relationship between the two companies continued or not.  *Id*.

15         Defendant Fusion disputes Plaintiff's contentions in its response to the motion.  Dkt. 47.

16  Defendant states that in 1998, Fusion shareholders Shawn Copeland, Neil Stockman, and Skye

17  Wollenberg were developing a new automotive sanding block, and sought a partner who could

18  provide funding and a way to bring the product to the market.    Dkt. 47, p. 7.  Defendant states

19  that it was introduced to Plaintiff Trade Associates through Cliff Turnbull, who eventually

20  became a Fusion Shareholder.  *Id*.  Defendant contends that it conceived and developed the

21  Dura-Block trademark independently from Trade Associates, and that unbeknownst to it, in

22  December 1999, Trade Associates filed a trademark application, claiming to have used the

23  trademark Dura-Block exclusively for its own benefit in August 1999.  Dkt. 47, p. 8-9.

24  Defendant further argues that the Dura-Block trademark may be transferred to Fusion pursuant to

25  Section 6.4 of the Royalty Agreement because the Plaintiff abandoned the marketing of Dura-

26  Block technology.  Dkt. 47, p. 12-18.  Defendant also argues that the trademark may be

27  transferred through equitable remedies under the theory of unjust enrichment.  Dkt. 47, p. 18-22.

28         Plaintiff Trade Associates replies to Defendant's arguments by maintaining that it has

1    incontestable evidence that it owns the trademark and that the royalty agreement does not permit

2    transfer of the trademark to Fusion.  Dkt. 50.  Plaintiff also makes a request for attorney's fees

3    for having to bring this motion.  Dkt. 50, p. 13.

4                                    **II. DISCUSSION**

5            Summary judgment is proper only if the pleadings, the discovery and disclosure materials

6    on file, and any affidavits show that there is no genuine issue as to any material fact and that the

7    movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

8    entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

9    showing on an essential element of a claim in the case on which the nonmoving party has the

10   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

11   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

12   for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

13   (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

14   metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a

15   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

16   requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

17   *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

18   *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

19           The determination of the existence of a material fact is often a close question.  The court

20   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

21   e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

22   *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

23   of the nonmoving party only when the facts specifically attested by that party contradict facts

24   specifically attested by the moving party.  The nonmoving party may not merely state that it will

25   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

26   to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.

27   Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

28   be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

1    Any registration of a mark which is owned by a party to an action shall be admissible in

2    evidence and shall be prima facie evidence of the validity of the mark.  15 U.S.C. § 1115(a).   If

3    the registered mark has become incontestable under 15 U.S.C. 1065, the registration shall be

4    conclusive evidence of the validity of the registered mark and the registrant's ownership of the

5    mark.  15 U.S.C. § 1115(b).  A mark will be incontestable if the registered mark has been in

6    continuous use for five consecutive years after registration and is still in use in commerce.  15

7    U.S.C. § 1065.  "In cases involving a manufacturer and distributor in an exclusive distributorship

8    arrangement, courts typically look first to any agreement between the parties regarding

9    trademark rights."  *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 654 (9th Cir. 2005)*(citing Sengoku*

10   *Works Ltd. v. RMC Int'l Ltd.*, 96 F.3d 1217, 1220 (9th Cir. 1996)).

11   This appears to be a case involving the interrelationship of a series of patents, a royalty

12   agreement, and trademarks related to the goods which are the subject of the patents.  The

13   Plaintiff wishes to dispose of Defendant's counterclaim that the Dura-Block trademark should

14   have been transferred to Defendant Fusion by essentially arguing that the trademark registration

15   provides incontestable evidence that Plaintiff Trade Associates owns the trademark.  Defendant

16   Fusion counters by arguing that the royalty agreement allows for transfer of the trademark, or at

17   the minimum, there are still genuine issues of material fact regarding the ownership of the

18   trademark and meaning of the royalty agreement.

19   There are several genuine issues of material fact which prevents the granting of

20   Plaintiff's motion for partial summary judgment.  Even if the Court assumes that the Plaintiff's

21   ownership of the trademark is incontestable, the trademark may still be assigned or transferred to

22   another party under contract.  *See* 15 U.S.C. § 1060(a)(1)("A registered mark... shall be

23   assignable....");  *Watec*, 403 F.3d at 654 (In resolving ownership disputes "[c]ourts typically look

24   first to any agreement between the parties regarding trademark rights.")  So the issue in not

25   whether Trade Associates is the registered owner of the trademark, but what does the Royalty

26   Agreement state regarding the trademark rights.

27   The relevant Royalty Agreement provision states in part,

28

ORDER - 4

1    This Agreement may be cancelled or terminated by Fusion upon 60 days written
2    notice if Trade Associates abandons the marketing of the Dura-Block or any
     product utilizing Dura-Block Technology....  If Fusion terminates this Agreement
3    under this Paragraph 6.4, Trade Associates agrees to transfer any and all patents
     and other rights to the Dura-Block Invention and any improvements thereto,
4    including the right to make, have made, use, have used, and sell products
     embodying the Dura-Block and any improvements thereto for all fields of use to
5    Fusion.  Prior to transfer of such patents and rights, Fusion will pay to Trade
     Associates any fees paid for patents and trademarks related to the Dura-Block.

6    Dkt. 48-3, p. 4.  Defendant Fusion contends that the provision provides for the transfer of any

7    trademark rights Trade Associates might have developed in connection with Dura-Block

8    Technology.  Dkt. 47, p. 13-14.  Plaintiff Trade Associates argues that (1) the trademark is

9    incontestable, (2) Fusion is legally precluded from the relief it seeks because the assignment

10   would be an "assignment in gross" which is not allowed under the law, (3) the provision in

11   Paragraph 6.4, "patents and other rights to the Dura-Block Invention and any improvements

12   thereto," does not cover the Dura-Block trademark, (4) the Royalty Agreement states that Trade

13   Associates is the owner of the Dura-Block trademark and that the parties understood at the time

14   of the signing of the Royalty Agreement that Trade Associates was the owner, and (5) there is no

15   law supporting the proposition that a Royalty Agreement takes precedence over a federal

16   registration that subsequently becomes incontestable.  Dkt. 50, p. 11-13.

17          First, the incontestability provision of the Lanham Act was designed to provide a means

18   for a trademark holder to quiet title in the ownership of his mark.  *Reno Air Racing Assoc. v.*

19   *McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006).  However, it does not prevent the owner from

20   assigning trademark rights to another.  15 U.S.C. §1060(a)(1)("A registered mark... shall be

21   assignable with the good will of the business in which the mark is used....")  A trademark owner

22   may still transfer ownership or provide a license to another party.

23          The parties dispute the meaning of the Royalty Agreement, specifically Paragraph 6.4.

24   Upon a plain reading of the section, the rights and duties appear ambiguous.  Under the summary

25   judgment standard, where there is a genuine issue of material fact, the motion should be denied.

26   In this case, Plaintiff Trade Associates asserts that the Royalty Agreement does not transfer the

27   Dura-Block trademark to Fusion, while Fusion contends the opposite.  This is a genuine issue of

28   material fact.  Of note, Paragraph 6.4 states that "Fusion will pay to Trade Associates any fees

ORDER - 5

1   paid for patents and *trademarks* related to the Dura-Block." (emphasis added).  This connotes

2   that the Paragraph was intended to include the Dura-Block trademark, which lends credence to

3   the Defendant's assertions.

4          However, there is ambiguity as to the scope of the term "Dura-Block" and how the scope

5   of the term affects the transferability of the trademark.  The Dura-Block trademark appears to

6   cover more than just sanding blocks.  Dura-Block appears to also include "Ladder

7   Standoff/Stabilizer, Paint Seivel 'Swivel Device' Pro-Stream Wet Sanding Tool, Dura-Scrub

8   Soap Bar, and any derivatives of the above products mentioned."  Dkt. 47, p. 16, Dkt. 48-3, p.

9   10.  The Court is uncertain as to the exact scope of the term "Dura-Block."

10         This ambiguity also affects whether the assignment of the trademark is an "assignment in

11  gross."  An assignment of trademark must also transfer goodwill.  *E&J Gallo Winery v. Gallo*

12  *Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992).  An assignment made without goodwill is an

13  assignment in gross.  *Id*.  However, it is not necessary that an entire business or its tangible

14  assets be transferred, it is the goodwill of the business that must accompany the mark.  *Id*.  The

15  purpose behind requiring that goodwill accompany the assigned mark is to maintain the

16  continuity of the *product* symbolized by the mark.  *Id*.  In this case, the Court is unable to

17  determine the scope of the mark and the associated goodwill.  Moreover, the Court is uncertain

18  whether the Agreement provision includes the transfer of goodwill along with the trademark.

19         Finally, there is ambiguity as to whether Fusion terminated the Agreement in accordance

20  with the provisions of Paragraphs 6.4 and whether Trade Associates abandoned the marketing of

21  Dura-Block Technology.  The parties are in dispute as to the meaning of the term "abandon the

22  marketing of [] Dura-Block" and whether Trade Associates abandoned the marketing of Dura-

23  Block Technology under the Royalty Agreement.  As such, there is an genuine issue of material

24  fact.  For the foregoing reasons, Plaintiff's motion for partial summary judgment should be

25  denied.

26         Plaintiff's concurrent motion for attorneys' fees (Dkt. 50, p. 13) is without merit and

27  should be denied.  The Defendant's counterclaim does not appear to be frivolous.

28  ///

1

**III. ORDER**

2        The Court does hereby find and ORDER:

3        (1) Plaintiff's Motion for Partial Summary Judgment (Dkt. 38) is **DENIED**;

4        (2) Plaintiff's Motion for Attorneys' Fees is **DENIED**; and

5        (3)  The Clerk is directed to send copies of this Order all counsel of record and any party

6   appearing *pro se* at said party's last known address.

7        DATED this 30th day of August, 2010.

8

9

10       Robert J. Bryan
         United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER - 7